# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STATE OF WISCONSIN LOCAL GOVERNMENT PROPERTY INSURANCE FUND,<br><br>       Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, THE CINCINNATI INSURANCE COMPANY, and MILWAUKEE COUNTY,<br><br>       Defendants. | Case No. 15-CV-142-JPS<br><br><br><br><br><br>**ORDER** |

On February 7, 2017, Defendant The Cincinnati Insurance Company ("Cincinnati") filed a motion for judgment on the pleadings. (Docket #55). Plaintiff State of Wisconsin Local Government Property Insurance Fund (the "Fund") submitted its opposition to the motion on February 28, 2017. (Docket #65). Cincinnati replied on March 8, 2017. (Docket #66). For the reasons explained below, the motion must be denied.

Federal Rule of Civil Procedure ("FRCP") 12(c) permits a party to seek judgment once each side has filed its pleadings. Fed. R. Civ. P. 12(c). The Court reviews such motions

> by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under [FRCP] 12(b)(6).... Thus, we view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.

*Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citations and quotations omitted). The Court must "draw all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions." *Wagner v. Teva Pharm. USA, Inc.*, No. 15-2294, 2016 WL 6081381, at *1 (7th Cir. Oct. 18, 2016).

The following facts are gleaned from viewing the factual allegations of the complaint in a light most favorable to the Fund. The Fund insured, *inter alia*, the Milwaukee County (the "County") courthouse located at 901 North 9th Street, Milwaukee. (Docket #1-2 at 2). The County also purchased an insurance policy for the courthouse from Cincinnati. *Id.* at 7. The Fund's policy offered broad coverage, while Cincinnati's was directed only at "machinery and equipment" breakdowns and resulting damage. *Id.* at 8-11; *see* (Docket #13-3).

On July 6, 2013, a fire in the courthouse caused an estimated $18 million of damage. (Docket #1-2 at 14-15). The Fund manager made a determination of the loss and advanced payment to Milwaukee County. *Id.* at 8. The Fund paid the County for all but $1.6 million of the damage. *Id.* at 15, 19.

Both the Fund and Cincinnati policies included a "joint loss agreement" endorsement ("JLA"). *Id.* at 19. The JLA provides a dispute resolution mechanism when there is a disagreement between the Fund and Cincinnati regarding the availability or extent of coverage for a loss. (Docket #13-1 at 24). The JLA states that upon demand by the insured, the County, each company "shall . . . pay to the insured one-half of the amount of the loss which is in disagreement[.]" *Id.* It further states that "[t]he payments by the insurers hereunder and acceptance of the same by the insured signify the

Page 2 of 6

Case 2:15-cv-00142-JPS   Filed 03/13/17   Page 2 of 6   Document 68

agreement of the insurers to submit to and proceed with arbitration[.]" *Id.*; *see* (Docket #13-3 at 17-18) (Cincinnati's version of the JLA with equivalent language).

The County invoked the JLAs and asked each insurer for $800,000, which they duly paid. (Docket #1-2 at 19). The Fund alleges that its other payments beyond the $800,000 it paid pursuant to the JLA "were made pursuant to a determination that the loss was covered under the Fund policy," and "were made with full and continued reservation of all rights to seek a legal determination as to the ultimate responsibility for such payments and to pursue reimbursement from Cincinnati[.]" *Id.* at 15. It further alleges that the insurers anticipate arbitrating the $1.6 million at issue under the JLAs. *Id.* at 19. Nevertheless, the Fund specifically reserved the right "to pursue a recovery from Cincinnati for amounts advanced by the Fund, regardless of whether such amounts are" subject to the JLAs. *Id.* at 19-20. In its prayer for relief, the Fund requests declaratory judgment "that as a matter of law the Cincinnati Policy requires Cincinnati to reimburse the Fund for certain amounts the Fund has paid and will be obligated to pay to Milwaukee County" for the July 6, 2013 loss. *Id.* at 20-21.

The parties' arguments are relatively brief. Cincinnati contends that the Complaint fails to state a claim for relief, or in the alternative that the Court lacks subject matter jurisdiction, both for the same reason. (Docket #56 at 4-6). Namely, because the JLAs compel arbitration of the $1.6 million in dispute, there remains nothing left for the Court to decide. *Id.* at 6.

The Fund counters that it has asserted a claim for relief beyond the $1.6 million subject to arbitration. (Docket #65 at 2-3). It cites the passages of the Complaint quoted above, which it believes allow for damages in excess

of the JLA funds. *Id.* at 3-4. The Fund maintains that its allegations allow for recovery more than $1.6 million of its loss payments to the County, which now total over $19 million, from Cincinnati. *Id.* at 5. According to the Fund, it and Cincinnati "did not agree to arbitrate the entire matter in controversy. Rather, they contractually agreed to arbitrate only those specific amounts pursuant to which Milwaukee County invoked the policies' JLA." *Id.* at 6.

Cincinnati replies in two ways. First, it states that the Fund's position is inconsistent with the JLAs. (Docket #66 at 1). The Seventh Circuit's November 14, 2016 opinion in this matter described the JLA procedure as "a demand by the insured; a dispute between the insurers about liability; payment by each insurer of half the disputed amount; and acceptance of payment by the insured." (Docket #43 at 11). The language of the Fund's JLA echoes this interpretation. (Docket #66 at 2). As quoted above, it provides that each insurer will pay "one-half of the amount of the loss which is in disagreement[.]" (Docket #13-1 at 24). Cincinnati argues that the Fund is thus limited to pursuing the $1.6 million, because that is the "amount of the loss which is in disagreement" per the County's invocation of the JLA. *Id.* at 2-3.

Second, Cincinnati addresses the Fund's position that it reserved the right to pursue Cincinnati for amounts above and beyond the $1.6 million subject to JLA arbitration. *Id.* at 3. Cincinnati claims that the Fund's position violates the election of remedies doctrine. *Id.* In short, Cincinnati contends that as applied here, the doctrine precludes a party from litigating when it has voluntarily consented to arbitrating the same issue. (Docket #66 at 3-4); *see Jarosch v. Am. Family Mut. Ins. Co.*, 837 F.Supp.2d 980, 1017 (E.D. Wis. 2011). Cincinnati states that it relied on the prospect of arbitrating its entire dispute with the Fund in complying with its JLA. (Docket #66 at 4-5). "Had

Cincinnati known that the Fund intended to arbitrate anything less than the full amount 'which is in disagreement between the insurers,'" Cincinnati maintains that it "would never have agreed to engage in the procedures set forth in the JLA or to go forward with arbitration." *Id.* Cincinnati claims prejudice by its payment of the $800,000 pursuant to the JLA procedures and its agreement to arbitrate the $1.6 million. *Id.* at 5.

As shown above, the Fund's allegations clearly seek amounts over and above the $1.6 million at play in the JLA process. Viewing those allegations in a light most favorable to the Fund, the Court cannot say that "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore*, 570 F.3d at 82. The Court offers no opinion on the ultimate merit of Cincinnati's other arguments raised in its reply. Suffice it to say here that they do not account for the focus of a FRCP 12(c) motion—the pleadings—and its attendant standard of review.[1]

Accordingly,

**IT IS ORDERED** that the defendant The Cincinnati Insurance Company's motion for judgment on the pleadings (Docket #55) be and the same is hereby **DENIED**.

---

[1] The arguments also raise potential evidentiary issues addressed by neither party. One critical omission is an indication as to how the County determined that it would ask for $1.6 million from the Fund and Cincinnati. *See* (Docket #1-2 at 19) ("By letter dated August 1, 2014, Milwaukee County notified the Fund that the County was invoking the joint loss agreements . . . [and] requested that the Fund and Cincinnati each advance $800,000 . . . as the purported balance owed on the claim."). Cincinnati claims that the $1.6 million is the maximum disputed balance but this does not explain why the allegations 1) describe it as a "purported" balance, and 2) are silent as to who decided to demand $1.6 million and why. The Court leaves these and any other evidentiary questions for a later stage of these proceedings.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge