## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

_____

| | | | |
|---|---|---|---|
| STATE OF WISCONSIN LOCAL | ) | | |
| GOVERNMENT PROPERTY | ) | | |
| INSURANCE FUND, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| v. | ) | No. | 2:15-cv-00142-JPS |
| | ) | | |
| LEXINGTON INSURANCE COMPANY, | ) | | |
| ET Al. | ) | | |
| | ) | | |
| Defendants. | ) | | |

_____

### JOINT FINAL PRETRIAL REPORT
_____

NOW COME Plaintiff State of Wisconsin Local Government Property Insurance Fund ("the Fund"), Defendant Lexington Insurance Company ("Lexington"), and The Cincinnati Insurance Company ("Cincinnati"), by the respective attorneys of record, and pursuant to this Court's February 3, 2017 Trial Scheduling Order (Docket #51) (as modified by the August 8, 2017 Order (Docket #140) and Wis. E.D. Civil Local Rule 16(c)(1) hereby submit the following Joint Final Pretrial Report.

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... 2

I. SHORT SUMMARY. ................................................................................................ 3

    A. Facts. ................................................................................................................. 3
    B. Claims and Defenses. ...................................................................................... 4

II. STATEMENT OF THE ISSUES. ........................................................................... 5

III. NAMES AND ADDRESSES OF ALL WITNESSES EXPECTED TO TESTIFY. ........... 6

    A. Witnesses for the Fund. .................................................................................. 6
    B. Witnesses for Lexington. ................................................................................ 7
    C. Witnesses for Cincinnati. ............................................................................... 8

IV. STATEMENT OF THE BACKGROUND OF EXPERT WITNESSES LISTED. ............. 8

    A. Fund's expert witnesses. ................................................................................ 8
    B. Lexington's experts witnesses. ..................................................................... 10
    C. Cincinnati's experts witnesses. ................................................................... 14

V. EXHIBIT LIST. ...................................................................................................... 16

VI. DESIGNATION OF DEPOSITIONS AND TRANSCRIPTS. ...................................... 17

    A. Fund. .............................................................................................................. 17
    B. Lexington. ...................................................................................................... 17
    C. Cincinnati. ..................................................................................................... 18

VII. TIME NEEDED TO TRY THE CASE. .................................................................. 18

VIII. PROPOSED VOIR DIRE QUESTIONS. ............................................................... 18

IX. BRIEF SUMMARY OF THE ELEMENTS UNDERLYING EACH CLAIM AND DEFENSE TO BE ADJUDICATED. .................................................... 19

    A. Claims to be adjudicated ............................................................................... 19
    B. Defenses to claims to be adjudicated. ........................................................... 21

X. AGREED JOINT PROPOSED JURY INSTRUCTIONS. ............................................ 22

XI. DISPUTED JURY INSTRUCTIONS. ..................................................................... 22

XII. AGREED PROPOSED VERDICT FORM. ............................................................. 23

XIII. DISPUTED VERDICT FORM. ........................................................................... 23

Case 2:15-cv-00142-JPS   Filed 11/14/17   Page 2 of 25   Document 208

IX.     PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW............................ 23

**Appendix**

Attachment A (Exhibit List)

Attachment B (Proposed Voir Dire Questions)

Attachment C (Agreed Proposed Jury Instructions)

Attachment D (Disputed Jury Instructions)

Attachment E (Agreed Proposed Verdict Form)

Attachment F (Disputed Verdict Form)

## I.     SHORT SUMMARY.

### A.     Facts.

This lawsuit arises from a July 6, 2013 loss at the Milwaukee County Courthouse.  At the time Milwaukee County was insured under a policy of insurance issued by the State of Wisconsin Local Government Property Insurance Fund ("The Fund").  In addition, a machinery and equipment policy of insurance was issued to Milwaukee County by The Cincinnati Insurance Company ("Cincinnati"). Cincinnati Insurance Company provided Milwaukee County with its coverage position on October 31, 2014.  The Fund was insured under a policy issued by Lexington Insurance Company ("Lexington").  The County made a claim for the loss.  The Fund investigated and concluded that the loss was covered.  The Fund then made a claim on the Lexington policy.  The Fund paid the County $19,114,955. The Fund also incurred $1,785,215 in Loss Adjusting expense. Lexington investigated this claim and then on November 24, 2014, Lexington provided the Fund with a letter stating its coverage position.

While approving the County's claim, the Fund made a claim on the Lexington policy. In August 2013, Lexington notified the Fund that its initial investigation revealed damage due to

electrical arcing, which according to Lexington was barred under the Fund policy's electrical or mechanical breakdown exclusion. Thereafter, Lexington continued it investigation. In January 2014, Lexington paid the Fund $5 million "associated to the loss and damage" but "without specific designation as to a warranty of indemnification under the policy." (Docket #76-17 at 2.). Subsequently, Lexington provided the Fund with a letter stating its coverage position and a copy of Lexington's consultants' investigative report which detailed why Lexington believed the loss was caused by electrical arcing.

### B. Claims and Defenses.

In December 2014, the Fund commenced suit, naming Lexington, Cincinnati, and the County (since dismissed) as party defendants. The Complaint states three counts: declaratory judgment (as to all parties); breach of contract, against Lexington; and bad faith, against Lexington. The case was removed to the Wisconsin Eastern District court.

The parties have disputed the cause of the loss and whether the policies afford coverage. The Fund deemed the loss to be from fire and resulting smoke from a failed capacitor in the Courthouse electrical equipment. The Fund concluded that the capacitor failed due to wear and tear which resulted in the igniting of oil inside the capacitor, and subsequent heat and smoke. The Fund concluded that the loss was covered because there was sudden and accidental direct physical loss to the County's covered property, resulting at least arguably from a covered peril.

Lexington concluded that the capacitor failure resulted in an explosion causing mechanical damage that caused electrical arcing. Lexington contends a small discrete fire started after the arcing event and was confined to one equipment cabinet. Lexington also contends that coverage is excluded under its policy's Equipment Breakdown exclusion, and the Fund's electrical or mechanical breakdown exclusion (incorporated into Lexington's policy).

4

Cincinnati concluded that the capacitor failed, resulting in an explosion, fire and resulting smoke damage. Cincinnati contends that the damages are barred under its policy exclusions for explosion; an "accident" that is the result of explosion, fire or smoke; and fire or explosion that occurs at the same time as an "accident" or that ensues from an "accident."

## II.     STATEMENT OF THE ISSUES.

The Fund contends the case is poised to go to trial for purposes of a finding on the Fund's bad faith claim against Lexington. Conversely, Lexington contends that there remains a dispute as to the amount of the loss, and the amount owed by Lexington to the Fund as a result of the liability under Counts One and Two. Cincinnati seeks dismissal on grounds that the Court's October 31, 2017 order disposes of Count One, which is the only count directed to Cincinnati.

Bad Faith issues for trial:

1.      Whether the Fund's claim was properly investigated by Lexington, and whether Lexington gave the results of that investigation a reasonable evaluation and review.?

2.      Whether Lexington's interpretation of the insurance policies was unreasonable as to constitute bad faith?

3.      What compensatory damages, if any, proximately resulted from Lexington's bad faith that would not have been incurred but for Lexington's conduct.?

4.      Did Lexington act maliciously toward the Fund or in an intentional disregard of the Fund's rights?

5.      What sum, if any, should be award against Lexington as punitive damages?

6.      Lexington proposed issue: Whether Lexington determined that the amount of the covered loss did not exceed $6.8 million.

5

Declaratory Judgment issues for trial:

1.      Was there direct loss to Milwaukee County's property as a result of a sudden and accidental breakdown of any mechanical or electrical machine or apparatus used for generating, transmitting or using mechanical or electrical power?

2.      If so, was the loss or damage caused directly or indirectly by: 1) explosion; 2) an "accident" that is the result of explosion, fire or smoke; or 3) fire or explosion that occurs at the same time as an "accident" or that ensues from an "accident"?

3.      What is the cost to repair or replace the covered physical loss or damage with property of like kind, capacity, size and quality, and used for the same purpose?

4.      Lexington proposed issue: Whether, based on the order of October 31, 2017 (Docket #156), Lexington can contest the reasonable and necessary costs to repair or replace the physical loss or damage covered under the Lexington policy.

## III.    NAMES AND ADDRESSES OF ALL WITNESSES EXPECTED TO TESTIFY.

### A.    Witnesses for the Fund.

1.      Brynn Bruijn-Hansen, 125 S. Webster, Madison, WI

2.      James Camacho, 2012 Norton Avenue, Waukesha, WI

3.      Battalion Chief Christopher Synder, 3835 N. 79th Street, Milwaukee, WI

4.      Firefighter Michael Wise, 3363 S. 95th Street, Milwaukee WI

5.      Judge Jeffrey Kremers, Milwaukee County Circuit Court Judge

6.      Ossian Cooney, Lexington Insurance Company

7.      Ed Frank, Lexington Insurance Company

8.      Michael Newman, 3701 N. Ravenswood, Chicago, IL

9.      Timothy McGreal, 19417 Beaver Creek Lane, Mokena, IL

6

10.    Frank Seter, 1864 S. Elmhurst Rd, Mount Pleasant, IL

11.    Carolyn Kelly, 8380 Hwy 18 & 151, Verona, WI

12.    Steve Claxton, 256 Eisenhower Lane South, Lombard, IL

13.    Christopher Lautenberger, 1921 University Avenue, Berkley, CA

14.    Jim Leatzow, 1265 Pine Isle Road, Three Lakes, WI


**B.    Witnesses for Lexington.**

1.    Ossian Cooney, Lexington Insurance Company, 99 High Street, Boston, Massachusetts

2.    Edward Frank, Lexington Insurance Company, 3602 County Line Road, Skaneateles, New York

3.    Scott Richardson, VeriClaim, Inc., 1833 Centre Point Circle, Naperville, Illinois

4.    Michael Newman, Newman & Newman, 3701 N. Ravenswood, Chicago, Illinois

5.    Jim Camacho, 2515 N. 124th St. Brookfield, WI 53005

6.    Scott Tebo, Unified Investigations & Sciences, 2055 W. Army Trail Road, Addison, Illinois

7.    Scott Glinski, Milwaukee Fire Department

8.    Dennis Dietscher, 6239 South 106th Street, Hales Corners, Wisconsin

9.    Michael Quick, MP Quick Consulting, 801 Vine Place, West Bend, Wisconsin

10.    Mark Svare, MSD Engineering, 6451 McKinley Street NW, Ramsey, Minnesota

11.    Larry Hanke, MEE, Inc., 13805 1st Avenue North, Plymouth, Minnesota

12.    James Lord, Jensen Hughes, 3610 Commerce Drive, Baltimore, Maryland

13.    Jonathan Held, JS Held LLC, 50 Jericho Quadrangle, Jericho, New York

14.    Dale Frediani, RMG Consulting, LLC, 1280 Route 46, Parsippany, New Jersey

**C.     Witnesses for Cincinnati.**

1.      Lynn Smith of Cincinnati Insurance

2.      Duane Cantrell of Cincinnati Insurance

3.      Karl Aittaniemi of Rimkus Consulting

4.      Dennis Rasco of Rimkus Consulting

5.      John Diggle of Rimkus Consulting

6.      Otto William Soyk of Rimkus Consulting

The parties reserve the right to call any individual listed by any other party and further reserves the right to amend its witness list based upon further rulings of this Court.

**IV.     STATEMENT OF THE BACKGROUND OF EXPERT WITNESSES LISTED.**

**A.     Fund's expert witnesses.**

1.      <u>Carolyn Kelly</u>

Ms. Kelly is a graduate of the University of Wisconsin in Criminal Justice. From 1983 to 1994, Ms. Kelly was a Special Agent for the Wisconsin Division of Criminal Investigation and then became the Bureau Director, a position she held until 2009. As Bureau Director, Ms. Kelly was primarily responsible for supervising the state's Arson Bureau and serving as the Wisconsin State Fire Marshal, conducting cause/origin investigations. Beginning in 2009, Ms. Kelly worked as a fire investigator for Independent Investigations, investigating fires and explosions.

In 2013, Ms. Kelly founded Origin & Cause Resources and she works investigating fires and explosions. Ms. Kelly is a Certified Fire Investigator with the International Association of Arson Investigators, and a Fire Investigator with the National Board of Fire Service Professional Qualifications. She is also a Wisconsin Certified Instructor of Arson Investigation.

Case 2:15-cv-00142-JPS   Filed 11/14/17   Page 8 of 25   Document 208

2.     Christopher Lautenberger, PhD, PE

Dr. Lautenberger holds a Bachelor's degree in Mechanical Engineering and a Master's degree in Fire Protection Engineering from Worcester Polytechnic Institute and a PhD in Mechanical Engineering from the University of California at Berkeley. Dr. Lautenberger is a licensed professional engineer. His responsibilities include building code and fire code consulting, fire science research, design of fire protection and life safety systems, thermal sciences, atmospheric processes, and forensic reconstruction of fires. His work combines fire/building codes and related standards with technical aspects of fire science such as combustion, heat transfer, fluid dynamics, thermodynamics, fire dynamics and fire modeling. He has written extensively on topics of soot and smoke spread. Dr. Lautenberger co-teaches Masters-level courses in Fire Dynamics and Fire Modeling in the department of Fire Protection Engineering at California Polytechnic State University.

3.     Steven F. Claxton, PE, CFEI

Mr. Claxton holds a Bachelor's degree in electrical engineering. He is a licensed professional engineer and Certified Fire and Explosion Investigator. He has extensive experience in electrical and forensic engineering having investigated commercial, industrial, and residential electrical related fires and accidents. His experience includes reconstruction of electrical accidents, review and assessment of the applicability of codes, the analysis of equipment performances and determination of root cause.

4.     Jim Leatzow

Mr. Leatzow has 42 years of property/casualty insurance industry and agency experience. He has 22 years of national managing/underwriting general agent experience and 17 years of reinsurance experience. Mr. Leatzow has worked for 20 years in the area of Third Party Administrator claims handling/adjusting. He is a certified insurance and reinsurance arbitrator. Mr. Leatzow has been retained over 400 times as an expert in the areas of bad faith and coverage providing opinions in the areas of general liability, property, professional liability, surety, casualty lines and errors and omission.

**B.     Lexington's experts witnesses.**

1.     <u>Dale Frediani</u>

Mr. Frediani holds a Bachelor's degree in Economics from Duke University. He has forty-nine years of experience in the adjustment, supervision, management and analysis of first-party property insurance claims. Mr. Frediani began adjusting first-party property insurance claims in 1968 and over the course of his career rose to management positions at Chubb & Son, Inc., The CNA Insurance Companies and Reliance National Risk Specialists. At CNA Mr. Frediani had national responsibility for, among other things, commercial first-party property claims and at Reliance National he promulgated company-wide guidelines for the handling of commercial property and machinery breakdown claims. Mr. Frediani founded RMG Consulting in 1999 and since that time has served as an expert, arbitration and umpire in disputes involving commercial property insurance claims, machinery breakdown and reinsurance. He has been published on issues impacting the property insurance industry and is a frequent speaker/lecturer on property insurance issues and topics to various property insurance industry companies, groups and organizations.

Case 2:15-cv-00142-JPS   Filed 11/14/17   Page 10 of 25   Document 208

2.     <u>James Lord</u>

Mr. Lord obtained a B.S. in Mechanical Engineering and a M.S. in Fire Protection

Engineering from Worchester Polytechnic Institute.  He is Professional Engineer and a Certified

Fire Investigator.  Mr. Lord has served as a firefighter as well as a fire protection engineer and

spent ten years investigating fires and performing forensic engineering analysis for the United

States Bureau of Alcohol, Tobacco & Firearms ("ATF").  Mr. Lord performed approximately

700 fire investigations while at the ATF and testified on behalf of the ATF throughout the United

States and Canada.  He performed formal training for ATF agents throughout the country and has

instructed foreign fire investigators through the International Law Enforcement Agency in

Hungary and Thailand.  Mr. Lord has served as an Adjunct Instructor at Oklahoma State

University since 2014 teaching graduate level courses in fire dynamics and computer fire

modeling and has spoken/lectured throughout the country on fire protection and fire investigation

issues.


3.     <u>Jonathon C. Held</u>

Mr. Held obtained a B.A. in political science from George Washington University in

1977.  He has been employed by J.S. Held since 1977 and has served as CEO since 1985 where

he provides consulting services dealing with the scope and cost of repair to damages to the

building.    He has consulted on many of the largest and most complex catastrophic insurance

claims in history.  Mr. Held has been published on issues relating to claims for damages to

buildings under first-party property insurance claims and is a frequent speaker/lecturer on issues

relating to first-party claims to the American Bar Association and insurance industry groups,

11

companies, and organizations.  Mr. Held has served as an arbitrator or umpire in hundreds of property insurance claims.


4.      Larry Hanke

Larry Hanke is the Principal Engineer at Materials Evaluation and Engineering, Inc. Mr. Hanke obtained a B.S. in Metallurgical Engineering from Iowa State University, and has almost forty years of experience as a metallurgical and materials engineer in material evaluation, component testing, and failure investigation. He is a licensed professional engineer in multiple states, including Wisconsin, and has extensive experience in laboratory testing of materials and components evaluating damage and determining the circumstances and causes of damage. He has performed thousands of component failure analyses, including many analyses involving material degradation from thermal exposures and electrical discharge, as well as work on a wide variety of electrical equipment, including residential and commercial electrical systems, medium-voltage distribution gear, and high-voltage equipment.


5.      Mark Svare

Mark Svare is the managing member and principal engineer at MSD Engineering. Mr. Svare obtained a Bachelor of Electrical Engineering degree from the University of Minnesota, with an emphasis is electrical power system distribution, and has continued studies towards a Ph.D., focusing on the forensic investigation of electrical and fire damage to electrical conductors and equipment. In addition to being a registered professional engineer in a multitude of states including Wisconsin and a certified fire and explosion investigator, Mr. Svare is a licensed Master Electrician, a licensed electrical contractor and licensed electrical engineer in the

design, installation, and maintenance of electrical equipment used for light, power, and heat including electrical capacitors used in electronic equipment and electrical distribution equipment. Mr. Svare is also a qualified and competent person, as defined by the United States Department and Labor and the National Fire Protection Association, to design, install, maintain, inspect and performance test electrical distribution equipment, including the medium-voltage equipment involved in this matter. Mr. Svare has over twenty-five years of experience in power distribution equipment and has attended and taught dozens of courses and seminars in the field of electrical engineering.

### 6. Michael Quick

Michael Quick is the owner of MP Quick Consulting. He obtained a B.S. in criminal justice from the University of Wisconsin Milwaukee, and is a certified fire and explosives specialist and investigator, specializing in complex, significant-loss events. Mr. Quick was a police officer with the West Bend Police Department, and a special agent/criminal investigator for the United States Secret Service. For 25 years, Mr. Quick was a special agent for the United States Bureau of Alcohol, Tobacco, Firearms and Explosives where, in addition to investigating fire and explosion scenes, he was a Team Leader for one of ATF's four national response teams, as well as Team Leader for ATF's international response team, traveling to foreign countries to support in their fire investigations. Mr. Quick is a law enforcement instructor, has Firefighter I certification, and has more than 1600 hours as an instructor of advanced fire and explosion investigations, explosion dynamics and NFPA 21 to domestic and foreign organizations. In his career, Mr. Quick has conducted and participated in over 1600 fire and/or explosion scene examinations, over 300 live fire training scenarios, and over 200 live explosion demonstrations

13

and destructions.

### C.   Cincinnati's experts witnesses.

1.   <u>Karl Aittaniemi</u>.

Mr. Aittaniemi holds a Bachelor's degree in mechanical engineering from Southern Illinois University and an MBA from Worcester Polytechnic Institute. He has a certificate of graduate study in fire protection engineering from Worcester Polytechnic Institute. He is a licensed professional engineer in several states. Mr. Aittaniemi has an extensive background in fire protection product evaluation and has managed fire protection investigation products in accordance with nationally and internationally recognized model codes and standards. He has conducted numerous full scale and small scale regulatory fire tests in laboratory environments for Passive Fire Protection Systems and Discreet Building Material Products to determine suitability for intended use and to explain cause of failure. Mr. Aittaniemi has experience in mechanical and fire protection engineering in the nuclear power and utility industry. He has been involved mechanical system modification projects for existing nuclear power plants and risk mitigation for beyond design basis scenarios.

2.   <u>Dennis Rasco</u>.

Mr. Rasco is a graduate of the University of Texas with a Bachelor of Science degree in electrical engineering. His experience in industry knowledge covers over 40 years in areas of maintenance, operation, design, engineering, procurement, project and construction management, scheduling, cost estimating and budget control, implementing quality and control procedures and safety. He has been a licensed professional engineer in the State of Texas since 1993 and the

State of Alaska since 2009. Mr. Rasco has extensive experience in analyzing electrical failures, plant electrical systems, equipment maintenance, motor failures, transformer failures, electrical construction and design issues, control systems, electrical shock, work practices, electrical equipment subjected to water, fire or transportation damage and determining the cause and origin of electrical incidents. Mr. Rasco's experience includes plant construction, plant start up, plant operation, project management, regulatory compliance issues, and the design, installation, repair and operation of fiber optic networks. Mr. Rasco has received specialized training in fiber optic splicing techniques.

3.     John Diggle.

Mr. Diggle received a Bachelor of Science degree in electrical engineering from Cedarville University. During his professional career, he has participated in more than 1,000 forensic investigations. He has extensive experience in the inspection of electrical systems and appliances for the purpose of analyzing and evaluating potential electrical failure scenarios. He has provided technical assistance as well as expert opinions and testimony on matters involving residential, commercial and industrial building fires, as well as vehicle fires, lightening damage, electrocutions, and arc flashes. He is proficient in electrical equipment grounding and consumer product failure analysis. Mr. Diggle has also provided electrical design services for projects including the renovation of a 13 story residential building, the installation of a public high school athletic field complex and the renovation of a retirement home facility. He has taught the electrical section of the "Fire and Arson Investigation" course for the University of Illinois Fire Service Institute.

4.      Otto William Soyk.

Mr. Soyk holds a Master of Arts degree and Bachelor of Arts degree from Governor's State University in addition to numerous specialized training classes in specific areas. He is an adjunct professor at Penn Foster College where he developed and teaches a course in fire investigation and National Fire Protection Association, NFPA 921, with a target participant of fire fighters and law enforcement. He is a certified fire investigator through the International Association of Arson Investigators, a certified arson investigator through the Illinois State Fire Marshal's Office and a senior claims law associate through the American Education Institute. Mr. Soyk holds certificates from Moraine Valley Community College in automotive technology. Mr. Soyk has testified as an expert witness in arbitration hearings as well as state criminal and civil courts and has been recognized as an expert in fireplace installations in arbitration hearings. Mr. Soyk has extensive background in fire investigation, criminal investigation, and insurance fraud investigation. His professional experience includes fire, and explosion investigation, electric fire ignition experimentation, full scale fire testing of ignition scenarios, as well as computer fire modeling. Mr. Soyk has conducted numerous live fire training tests for fire fighters, as well as fire investigators using authentic room furnishings. In addition, he has prepared and presented numerous training sessions for law enforcement, fire fighters, claims adjusters and the public. He has conducted over 2,000 fire investigations including large multi-million dollar commercial losses.

## V.      EXHIBIT LIST.[1]

A list of exhibits to be offered at trial by the parties, sequentially numbered according to

---

[1] The list of exhibits to be offered at trial are sequentially numbered according to Gen. L.R. 26: Plaintiff 1–999; Lexington 1000–1999; Cincinnati 2000–2999. The list is prepared using "Exhibit and Witness List" form (AO-187), with the completed form AO-187 mailed to the Court's proposed order mailbox (StadtmuellerPO@wied.uscourts.gov) at the time the Final Pretrial Report is electronically filed.

General L.R. 26, is attached to this Joint Final Pretrial Report as <u>Attachment A.</u>

The parties reserve the right to use any exhibit listed by any other party and further reserves the

right to amend its exhibit list pending further rulings from this Court.

## VI.     DESIGNATION OF DEPOSITIONS AND TRANSCRIPTS.

### A.     Fund.

### B.     Lexington.

<u>Dennis Alan Dietscher:</u> 6;8-25, 7;1-5, 7;14-25, 8;1-21, 11;14-25, 12;1-15, 13;12-25, 14;1-24, 15;4-18, 15;24-25, 16;1-15, 17;5-25, 18;1, 20;17-25, 21;1-14, 22;11-25, 23;1-12, 23;24-25, 24;1-8, 28;18-25, 29;1-25, 30;1-4, 30;17-25, 31;1-4, 33;11-25, 34;1-19, 35;2-10, 36;13-23, 37;6-25, 38;1-25, 39;1-25, 40;1-3, 42;19-25, 43;1-22, 44;15-25, 45;1-17, 46;1-25, 47;1-25, 48;2-25, 49;1-2, 50;1, 50;5-25, 51;1-25, 52;1-4, 52;11-25, 53;1-12, 53;20-25, 54;8-12, 55;12-18, 59;2-25, 60;1-14, 60;17-22, 61;10-25, 62;12-20, 62;23-25, 63;1, 63;5-10, 63;13-20, 70;15-25, 71;1-2, 71;6-19, 72;1-11, 72;21-25, 73;1-19, 74;11-25, 75;22-24, 76;2-25, 77;1-25, 78;1-25, 79;1-4, 80;9-25, 81;12, 81;15-25, 82;1-4, 83;12-15, 83;22-25, 84;1-24, 85;9-25, 86;1-13, 88;18-24, 90;2-25, 91;1-19, 91;25, 92;2-10, 92;13-24, 93;10-25, 94;1-22, 95;3-25, 96;1-11, 97;6-10, 97;18-23, 98;1-6, 98;13-25, 99;1-7, 100;5-25, 101;1-25, 102;1-10, 102;13-23, 103;2, 104;2-14, 105;1-4, 105;12-20, 106;5-12, 106;23-25, 107;1-24, 108;12-25, 109;1-4, 112;1-25, 113;1-5, 114;14-18, 114;21-25, 115;1-9, 115;20-25, 120;1-25, 121;1-16, 122;14-25, 123;1-11, 126;14-19, 132;10-16, 132;20-25, 133;1-12, 134;15-25, 135;1-2, 135;16-25, 136;1-11, 136;22-25, 137;3-5, 137;18-25, 138;1-25, 139;1-9, 139;16-25, 140;1-13, 140;23-25, 141;1-16, 142;3-13, 143;4-18, 144;2-25, 145;1-6

<u>Jim Camacho:</u> 4;6-15, 6;17-24, 7;2-25, 8;1-9, 12;21-24, 13;15-25, 14;1-4, 16;12-15, 18;21-24, 19;16-19, 20;19-25, 21;1-5, 27;8-12, 20-25; 28;1-2, 17-19, 29;24-25, 30;1, 31;21-25, 32;1-2, 40;12-25,18-25, 41;1-13, 42;24-25, 43;1-2,6-11,20-23, 46;11-23, 48;24-25, 49;1-25, 52;21-25, 53;1-21, 55;17-25, 56;1-5,15-21, 57;11-19, 60;25, 61;1-25, 62;1-13, 63;1-25, 64;1-4, 66;8-25, 67;1-7,16-25, 68;9-16, 69;11-20, 70;4-25, 71;1-14, 72;8-17, 73;4-10,21-25, 74;1-17, 77;20-25, 78;1, 79;9-16;17-25, 80;1-13, 94;11-16,18-23; 96;17-25, 97;1-2, 111;16-25, 112;1-8,18-24, 127;1-6, 130;16-25, 131;1-4,10-18, 135;18-25, 136;1-13, 139;20-25, 140;1-3

<u>Scott Glinski (Milwaukee Firefighter):</u> 3;14-21, 4;1-8, 4;13-21, 4;24-25, 5;1, 7;7-13, 8;18-25, 9;1-3, 10;1-14, 11;5-14, 19;6-25, 20;1-19, 21;4-8, 22;2-23, 23;3-11, 23;16-25, 24;1-25, 25;1-6, 27;12-25, 29;1-3, 29;7-25, 30;1-25, 31;1-25, 32;1-25, 33;1-5, 33;13-25, 35;17-19, 39;17-20, 43;20-25, 44;1-12, 44;21-25, 45;16-25, 46;1-4, 52;6-13, 53;6-25, 54;1, 54;5-25, 55;1-13, 55;18-22, 56;21-25, 57;1-9, 61;23-25, 62;1-9

<u>Christopher Snyder:</u> 3;9-10,14-17,21-22, 5;14-16, 17;4-7, 28;19-23, 29;1-25, 30;1-13, 35;3-25, 36;1-24, 46;23-25, 47;1-10, 48;13-25, 49;1-5, 57, 15-25, 58;1-2,7-15, 59;16-25,

60;1-25, 61;1-13, 62;20-21,24-25, 63;1, 3-25, 64;1-10, 67;18-23, 68;8-10, 83;20-25, 84;1-25, 85;1-2,7-14, 88;14-25, 89;1-10, 93;19-25, 94;1-8, 95;7-25, 96;1-16, 97;7-10,14-17, 99;5-25, 100;1-11, 18-24, 101;3-5,9, 104;19-25, 105;1-2,9-25, 112;15-25, 113;1-18, 126;12-21; 128;22-25, 129;1-25, 130;1-16,21-25, 131;1-16,21-22,24-25, 132;1-3,6

Scott Tebo: 6;3-15,21-24, 7;20-25, 8;1-8,23-25, 9;11-22, 10;5-18, 11;4-9,20-25, 12;1-15,25 13;1-2,17-21, 14;19-25, 15, 1-5, 16;16-25, 17;1-6, 18;11-25, 19;7-25, 20;1,6-25, 21;1-18, 22;20-25, 23;1-4, 25;1,18-24, 26;12-25, 27;1-13, 28;7-25, 29;1-3,17-25, 30;1-3,20-25, 31;1-12, 32;9-25, 33;1-3,8-25, 34;1-9,23-25, 35;1-14,22-25, 36;1-5,13-25, 37;1-14,22-25, 38;1-3, 39;11-25, 40;1-25, 41;1-5,17-25, 42;1-13, 44;1-24, 45;6-9,18-25, 46;1,13-15,19-25, 47;1-25, 48;1-25, 49;1-12,14,17,24, 50;12-25, 51;1-6,16-25, 52;1-3,14-25, 53;1-6,13-19,24-25, 54;1-9,15-20,25, 55;1-19, 56;2-8,13-25 57;1,6-11,18-23, 58;5-14,17-25, 59;1-22,25, 60;3-6,12-21,23-25, 61;1-18, 22-25, 62;1-8, 20-25, 63;1-8, 18-25, 64;1-25, 65;1-3, 7-23,25, 66;2-7,10-15,18-25, 67;1-16,25, 68;1-13, 69;5-18, 21-25, 70;1-15, 24-25, 71;1-8,12-18,20-25, 72;1-7,14-20, 73;21-25, 74;1-10,19-25, 75;1-25, 76;1-13, 77; 1-25, 78;1-18, 79;21-25, 80;1-25, 81;1-18, 21-25, 82;1-18, 83;14-25, 84;1-25, 85;1-25, 86;1-25, 87;1-11, 21-25, 88;1-25, 89;1-15, 17-23, 90;2-14, 17-20, 91;20-25, 92;1-13, 93;14-25, 94;1-15, 95;7-25, 96;1-12, 15-25, 97;1-25, 98;1-25, 99;1-22, 100;1-25, 101;1-19, 23-25, 102;1-22, 104;9-25, 105;1-8, 108;9-23, 109;11-25, 110;1-9,12-13, 111;3-25, 112;1-25, 113;1-20, 24-25, 114;1-9, 115;23-25, 116;1-25, 117;1-7, 118;5-25, 119;1,122;10-25, 123;1-19, 124;10-25,125;1-25, 126;1-25, 127;14-25, 128;1-19, 24-25, 129;1-9,15-25, 130;1-25, 131;1-17

James Weber: 6;7-9,12-24, 11;24-25, 12;1-5, 20;1-25, 21;1-13, 114;24-25, 115;1-14, 116;8-25,117;1-7, 118;4-25, 119;1-25, 123;17-19, 23,25, 124;1-5,9-18, 125;1-4, 8-16, 139;24-25, 140;1-12, 19-25, 141;1-18.

The parties the right to amend its deposition designations based upon designations made by any other party and in light of further rulings from this Court.

### C. Cincinnati.

## VII. TIME NEEDED TO TRY THE CASE.

The parties anticipate that 12 days will be needed to try the case.

## VIII. PROPOSED VOIR DIRE QUESTIONS.

The proposed questions that the parties would like the Court to ask on voir dire are attached to this Joint Final Pretrial Report as Attachment B.

18

## IX. BRIEF SUMMARY OF THE ELEMENTS UNDERLYING EACH CLAIM AND DEFENSE TO BE ADJUDICATED.

### A. Claims to be adjudicated.

Fund Count One: Declaratory judgment that Lexington and Cincinnati must reimburse the Fund, pursuant to their respective insurance policies, for the amounts paid to the County.

Based on the Court's October 31,2017 Order, Lexington is liable to the Fund under County One. The Fund takes the position that under Count One, Lexington is liable to the Fund for the amounts paid to the County. (Docket # 156 at 1-2, 13,14-15, and 18.)

As respects Cincinnati, Count One seeks a declaration as to the amounts owed for the loss under Cincinnati's policy. (Docket #1-2 ¶¶ 72-74.) The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201 (the federal "Declaratory Judgment Act"). Fed. R. Civ. P. 57. Resolving rights and duties under an insurance contract is a proper subject for a declaratory judgment. *Auto Owners Ins. Co.* v. *Pers. Touch Med Spa, LLC,* 763 F. Supp. 2d 769, 775 (D.S.C. 2011). A count for declaratory judgment may require a jury finding on facts material to the rights and duties of parties to an insurance contract. *See, e.g., Cummings* v. *New England Ins. Co.,* 266 F.2d 888, 889 (5th Cir. 1959). Count three requires a jury finding as to facts material to Cincinnati's policy (including whether there is evidence of direct loss to the County's property caused by or resulting from sudden and accidental breakdown of any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power), whether the loss and damage is excluded under the Cincinnati policy, and if not excluded, the cost of repair or replacement of the covered damaged property.

Fund Count Three: Bad faith (against Lexington).

As stated in this Court's October 31,2017 Order (Docket #156 at 19-20), to prove a bad faith claim, a plaintiff must show "(1) 'the absence of a reasonable basis for denying benefits of

the policy,' and (2) 'the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.'" *Blue* v. *Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 595 (7th Cir. 2012) (quoting *Anderson,* 271 N.W.2d at 376). The first element of a bad faith claim is assessed objectively. *Advance Cable Co., LLC* v. *Cincinnati Ins. Co.,* 788 F.3d 743, 748 (7th Cir. 2015). The Court considers whether "a reasonable insurer under the circumstances [would] have denied or delayed payment of the claim under the facts and circumstances." *Anderson,* 271 N.W.2d 377. Stated another way, if an insured's claim is "fairly debatable" either in fact or law, then there existed a reasonable basis for denying the claim, and an insurer cannot have denied the claim in bad faith. *Id.* at 376. In analyzing this issue, the Court also considers "'whether the insurer properly investigated the claim and whether the results of the investigation were subject to a reasonable evaluation and review.'" *Advance Cable Co.,* 788 F.3d at 748 (quoting *Brown* v. *Labor & Indus. Review Comm'n,* 671 N.W.2d 279, 287-88 (Wis. 2003)); *see also* Wis. Pattern Jury Inst. § 2761, Bad Faith By Insurance Company: Assured's Claim.

As applied in this case, the foregoing elements apply to three separate grounds supporting bad faith: (1) that Lexington failed to conduct a proper investigation and did not subject its investigation to appropriate review; (2) that Lexington's interpretation of the insurance policies is so unreasonable as to constitute bad faith; and (3) that Lexington intentionally delayed its investigation, thereby avoiding the need to finally determine coverage and pay. *(See* Docket #156 at 22, 24, and 26.)

Request for punitive damages.
Wisconsin law allows an award of punitive damages where evidence shows the defendant acted "maliciously" or "in an intentional disregard of the rights of the plaintiff." Wis. Stat. § 895.043(3). Intentional disregard is defined as action "with a purpose to disregard the

plaintiffs rights," or acting while "aware that his or her acts are practically certain to result" in the disregard. *Boomsma* v. *Star Transp., Inc.,* 202 F.Supp.2d 869, 881 (E.D. Wis. 2002). On a bad faith claim against an insurer, the factors necessary for an award of punitive damages require a showing of: (1) evil intent deserving of punishment or of something in the nature of special ill-will; or (2) wanton disregard of duty; or (3) gross or outrageous conduct. *Trinity Evangelical Lutheran Church & Sch.-Freistadt* v. *Tower Ins. Co.,* 661 N.W.2d 789, 797 (Wis. 2003).

Punitive damages must be proven with clear and convincing evidence. *Franz* v. *Brennan,* 431 N.W.2d 711, 713 (Wis. Ct. App. 1988). While judges serve as gatekeepers before sending a question on punitive damages to the jury, once the issue of punitive damages is properly before the jury, its decision to award punitive damages is accorded deference. *Kimble* v. *Land Concepts, Inc.,* 845 N.W.2d 395, 405 (Wis. 2014).

**B.     Defenses to claims to be adjudicated.**

Cincinnati's defenses to the claim for declaratory judgment include the following: Was the loss or damage caused directly or indirectly by: 1) an explosion; or 2) an accident that is the result of explosion, fire or smoke; or 3) fire or explosion that occurs at the same time as an accident or that ensues from an accident.

Lexington's Defenses to Plaintiff's claims include the following:

For its defense to the contract claim, Lexington contends that the reasonable and necessary cost to repair and/or replace the damage caused by the covered loss is $6.8 million. Plaintiff has the burden of proving by a preponderance of the evidence what is the reasonable and necessary cost to repair and/or replace covered loss.

For its defense to the bad faith claim, Lexington states that it met its duty of good faith and fair dealing by making a payment under the Lexington insurance contract based on a covered

loss amount of $6.8 million.

It is Plaintiff's burden to prove, by clear and convincing evidence, that Lexington's position with regard to coverage was not "fairly debatable" (*Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978); *Ullerich v. Sentry Ins.*, 824 N.W.2d 876, 878(Wis. App. 2012)), and the inquiry is constrained to the "time at which the decision to deny benefits is made." *Smith v. United of Omaha Life Insurance*, 2016 WL 4133535, *3-4 (E.D. Wis. Aug. 3, 2016) (citing *Tripalin v. American Family Mut. Ins. Co.*, 880 N.W.3d 183 (Wis. App. Apr. 7, 2016) and *Ullerich*, 824 N.W.2d at 884-85). For its defense, Lexington contends that it had a reasonable basis for its determination of the covered loss amount. Plaintiff has the burden to prove, by clear and convincing evidence that Lexington had no reasonable basis for its determination of the covered loss amount and must also prove what compensatory damages resulted that would not have been incurred except for the bad faith conduct.

For its defense to the punitive damages claim, Lexington denies that it acted maliciously or in an intentional disregard of Plaintiff's rights. Plaintiff has the burden by clear and convincing evidence to prove any entitlement of punitive damages.

## X. AGREED JOINT PROPOSED JURY INSTRUCTIONS.

The agreed joint proposed instructions that the parties would like the Court to present to the jury are attached to this Joint Final Pretrial Report as <u>Attachment C</u>.

The parties reserves the right to submit revised instructions in light of further rulings of this Court. Further, by tendering these instructions Lexington is not admitting that there exists any evidence to support the instruction.

## XI. DISPUTED JURY INSTRUCTIONS.

The disputed proposed instructions that the parties would like the Court to present to the

jury are attached to this Joint Final Pretrial Report as <u>Attachment D</u>.

The parties reserve the right to submit revised instructions in light of further rulings of this Court.  Further, by tendering these instructions Lexington is not admitting that there exists any evidence to support the instruction.

## XII.    AGREED PROPOSED VERDICT FORM.

The proposed verdict form instructions that the parties would like the Court to present to the jury are attached to this Joint Final Pretrial Report as <u>Attachment E</u>.


## XIII.   DISPUTED VERDICT FORM.

The disputed proposed verdict form instructions that the parties would like the Court to present to the jury are attached to this Joint Final Pretrial Report as <u>Attachment F</u>.

## IX.    PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW.

Not applicable.

Respectfully submitted on this 13th day of November, 2017.

**s/Barbara A. O'Brien**

Robert C. Burrell (Wis. State Bar No. 1014530)
Barbara A. O'Brien (Wis. State Bar No. 1018341)
Patryk Silver (Wis. State Bar No. 1036738)
Frederick J. Strampe (Wis. State Bar No. 1029795)
*Attorneys for Plaintiff State of Wisconsin Local Government Property Insurance Fund*
Borgelt, Powell, Peterson & Frauen, S.C.
1243 N. 10th St, Ste. 300 Milwaukee, WI205
Tel. (414)276-3600 Fax (414)276-0172
rburrell@borgelt.com psilver@borgelt.com
bobrien@borgelt.com
fstrampe@borgelt.com

**s/ Peter E. Kanaris**

Peter E. Kanaris
David E. Heiss
Cheryl L. Mondi
Jefferson D. Patten
*Attorneys for Defendant, Lexington Insurance Company*
FISHER KANARIS, P.C.
One South Wacker Drive, Suite 3100
Chicago, Illinois 60606
Tel: 312.474.1400
Fax: 312.474.1410
pkanaris@fisherkanaris.com
dheiss@fisherkanaris.com
cmondi@fisherkanaris.com
jpatten@fisherkanaris.com

Monte E. Weiss (Wis. State Bar No. 1003816)
WEISS LAW OFFICE, S.C.
1017 W. Glen Oaks Lane, Suite 207 Mequon, Wisconsin 53092
Tel: 262.240.9663 Fax: 262.240.9664
mweiss@mweisslaw.net

**s/ James M. Hoey**

James M. Hoey (Wis. State Bar No. 1233505)
Celeste A. Hill
Patrick L. Breen
*Attorney for Defendant, The Cincinnati Insurance Company*
CLAUSEN MILLER P.C.
10 South LaSalle Street Chicago, IL 60603-1098 Tel: (312)

24

606-7493 Fax: (312) 606-7777
Email: jhoey@clausen.com
chill@clausen.com
pbreen@clausen.com